

```
                                                        FILED
                                                CLERK, U.S. DISTRICT COURT

                                                     JUL - 1 2008

                                                CENTRAL DISTRICT OF CALIFORNIA
                                                BY                      DEPUTY
```

Priority  ✓
Send      ✓
Enter     ✓
Closed    ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| DENNIS W. KIRCHNER,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | No. ED CV 07-1023-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.
## PROCEEDINGS

Plaintiff filed this action on August 21, 2007, seeking review of the Commissioner's denial of his application for Supplemental Security Income. The parties filed Consents to proceed before the undersigned Magistrate Judge on August 31, 2007, and September 7, 2007. Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 24, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on March 18, 1958. [Administrative Record ("AR") at 50, 64, 452.] He has an eighth grade education [AR at 72, 453], and past relevant work experience as a mechanic's helper and a construction worker. [AR at 68, 454.]

On February 28, 2003, plaintiff filed his application for Supplemental Security Income ("SSI") payments, alleging that he has been unable to work since July 1, 2000, due to hepatitis, sleep problems, and a learning disability.[1] [AR at 50-56, 64-66, 67-74.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 25-25A, 26, 28-31, 34-38, 39.] A hearing was held on June 16, 2005, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 449-76.] A vocational expert also testified. [AR at 471-74.] On September 20, 2005, the ALJ determined that plaintiff was not disabled. [AR at 11-22.] When the Appeals Council denied plaintiff's request for review on June 19, 2007, the ALJ's decision became the final decision of the Commissioner. [AR at 7-9.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

---

[1] Plaintiff previously filed an application for SSI on January 25, 2001, alleging disability since August 19, 1999, which was denied on September 18, 2002. [AR at 14.] Because retroactive disability benefits are not payable under Title XVI of the Social Security Act, the Administrative Law Judge ("ALJ") in the decision at issue here only decided the issue of disability with respect to the period of time since the filing date of February 28, 2003. [AR at 14-15.] Based on the prior decision under Title XVI of the Act, the ALJ determined that plaintiff was subject to a presumption of continuing nondisability, but found that plaintiff "rebutted the presumption of continuing nondisability by showing changed circumstances." [AR at 15.] The ALJ also found that plaintiff submitted new and material evidence that shows a decrease in his residual functional capacity. Thus, the ALJ concluded that he did "not have to give res judicata to the prior findings" of the previous ALJ as to plaintiff's residual functional capacity. [AR at 16.] In the Joint Stipulation, neither party challenges the ALJ's conclusion in this regard.

evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

### B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since February 28, 2003. [AR at 16, 21.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: hepatitis C, anxiety disorder, depressive disorder, and lower back disorder. [AR at 16, 21.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform "light exertional work with simple, repetitive tasks." [AR at 22.] At step four, the ALJ concluded that plaintiff was not capable of performing his past relevant work. [AR at 20, 22.] At step five, the ALJ found that the limitation to simple, repetitive work does not significantly erode the light occupational base, and

---

[2]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

that there are still a significant number of jobs available that plaintiff is capable of performing. [AR at 21-22.] Accordingly, the ALJ determined that plaintiff is not disabled. [Id.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to: (1) consider the treating psychiatrist's evaluation; (2) consider the lay witness statements; and (3) obtain vocational expert testimony on the effect of plaintiff's non-exertional impairments. Joint Stipulation ("Joint Stip.") at 2-3. As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).

Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. Where the treating physician's opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating physician if the ALJ provides specific and legitimate reasons for doing so that are based on substantial evidence in the record. Lester, 81 F.3d at 830; see Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993). An examining physician's opinion based on independent clinical findings that differ from the findings of a treating physician may constitute substantial evidence. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("Independent clinical findings can be either (1) diagnoses that differ

from those offered by another physician and that are supported by substantial evidence, (citation omitted) or (2) findings based on objective medical tests that the treating physician has not herself considered." (citation omitted)). However, even if an examining physician's opinion constitutes substantial evidence, the treating physician's opinion is still entitled to deference. Id.; Social Security Ruling[3] 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).[4] The ALJ must provide specific, legitimate reasons for the rejection of a treating physician's opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that the Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); see also SSR 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

Plaintiff argues that the ALJ failed to consider the treating psychiatrist's opinion. Specifically, plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for disregarding the opinion of plaintiff's treating psychiatrist, Dr. Jeremiah Umakanthan. Joint Stip. at 3-4. As discussed below, the Court agrees with plaintiff.

Dr. Umakanthan treated plaintiff from February 2004 to April 2005. On February 26, 2004, Dr. Umakanthan completed an Initial Psychiatric Evaluation of plaintiff. [AR at 331-34.] Dr.

---

[3] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[4] "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p. In determining what weight to accord the opinion of the treating physician, the ALJ is instructed to consider the following factors: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the degree to which the opinion is supported by relevant medical evidence; consistency of the opinion with the record as a whole; specialization; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

Umakanthan diagnosed plaintiff with impulse control disorder, not otherwise specified ("NOS"), dementia, NOS, post-traumatic stress disorder, depressive disorder, NOS, opioid dependence, and antisocial personality disorder. [AR at 334.] He also assigned plaintiff a Global Assessment of Functioning ("GAF") score of 40.[5] [Id.] For more than one year after Dr. Umakanthan performed the Initial Psychiatric Evaluation, Dr. Umakanthan saw plaintiff regularly for medication visits, in which he noted plaintiff's symptoms/complaints, his response to medications and compliance with the medication plan, and the side effects of plaintiff's medications. [AR at 321, 325, 375-93.] Dr. Umakanthan prescribed medication to plaintiff based on his evaluation of plaintiff during the medication visits. [Id.]

In the decision, the ALJ did not discuss Dr. Umakanthan's February 26, 2004, evaluation, or any of the observations made by Dr. Umakanthan during plaintiff's medication visits. [AR at 14-22.] Rather, in determining the degree of plaintiff's functional limitations resulting from his mental impairments (the ALJ found that plaintiff had the severe mental impairments of depressive disorder and anxiety disorder), the ALJ only specifically discussed certain Clinical Assessment and Diagnosis forms dated May 8, 2003,[6] as well as the consultative psychological evaluation completed by Dr. Rosa Colonna on May 6, 2003. [AR at 18-19, 132-35, 205-10.] Based on these

---

[5] A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th Ed. 2000). A GAF score in the range of 31 to 40 indicates some impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. DSM-IV at 34.

[6] The Clinical Assessment and Diagnosis forms were completed by a medical assistant and signed off by a licensed clinical social worker ("LCSW") who was authorized to diagnose. However, an LCSW is not an "acceptable medical source" as defined in 20 C.F.R. §§ 404.1513(a), 416.913(a). See 20 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5) ("Acceptable medical sources" include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists); see also SSR 06-03p (licensed clinical social workers are not "acceptable medical sources"). While an LCSW's opinion may provide insight into the severity of the individual's impairment and how it affects the individual's ability to function, information from an LCSW does not establish the existence of a medically determinable impairment. See SSR 06-03p. Rather, there must be evidence from an "acceptable medical source" to establish the existence of a medically determinable impairment. See id.

reports, the ALJ noted that plaintiff reported having increased symptoms of anxiety and depression in May 2003, and was diagnosed with bipolar I disorder with psychotic features, severe depression,[7] and panic disorder with agoraphobia. [AR at 18, 132-35.] The ALJ further noted that plaintiff "began group therapy and psychotropic medication . . . and continues with both currently." [AR at 18.] To support this assertion, the ALJ cited to interdisciplinary notes showing group therapy sessions, medication records, and medication visits. [AR at 122-30, 135, 317-65, 375-93.] The ALJ also summarized Dr. Colonna's evaluation, and noted that Dr. Colonna diagnosed plaintiff with antisocial personality disorder, and assessed plaintiff with a GAF score of 55.[8] [AR at 19, 205-10.] The ALJ concluded that plaintiff's "depressive disorder and anxiety disorder cause mild restrictions in his activities of daily living, mild limitations in his social functioning and moderate limitations in his ability to concentrate." [AR at 19.]

The ALJ's failure to specifically mention the opinion of Dr. Umakanthan was error.[9] Given that Dr. Umakanthan diagnosed plaintiff with, among other things, impulse control disorder, depressive disorder, and antisocial personality disorder, assigned plaintiff with a GAF score of 40, and treated plaintiff for more than one year, the ALJ should have, at a minimum, considered Dr.

---

[7] The ALJ indicated that the May 8, 2003, Diagnosis form reported that plaintiff was "currently depressed." [AR at 18.] On the Diagnosis form, plaintiff's current mood is noted as "depressed - severe." [AR at 132.]

[8] A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV at 34.

[9] Defendant argues that "Dr. Umakanthan's one-time mental status examination, including his GAF score, does not mandate a finding of disability here." Joint Stip. at 7. While in the end Dr. Umakanthan's opinion may not mandate a favorable disability determination, the ALJ is nevertheless required to consider relevant medical evidence and to provide specific, legitimate reasons for rejecting the opinion of a treating physician. As such, defendant's *post hoc* attempt to justify the ALJ's disregard of Dr. Umakanthan's evaluation is not sufficient to cure the error. See Vista Hill Foundation, Inc. v. Heckler, 767 F.2d 556, 559 (9th Cir. 1985) (a reviewing court may affirm an administrative decision only on grounds articulated by the agency); Barbato v. Commissioner of Social Sec. Admin., 923 F. Supp. 1273, 1276 (C.D. Cal. 1996) (a court may remand if the decision of the ALJ as to a claimant's entitlement to benefits on its face does not adequately explain how a conclusion was reached, even if Social Security Administration can offer proper *post hoc* explanations for such unexplained conclusions). In any event, Dr. Umakanthan treated plaintiff for over one year.

Umakanthan's findings in the Initial Psychiatric Evaluation and his observations in the interdisciplinary notes from the "face to face" medication visits with plaintiff, and explained the weight he gave Dr. Umakanthan's opinion.[10] Indeed, as a specialist in psychiatry, the ALJ could have given more weight to the opinion of Dr. Umakanthan. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5) (an ALJ can give more weight to the opinion of a specialist about medical issues related to his or her area of specialty). Instead, as noted above, the ALJ discussed other medical evidence and completely ignored Dr. Umakanthan's evaluation and interdisciplinary notes. For instance, the ALJ noted the GAF score of 55 assessed by Dr. Colonna, but failed to discuss the GAF score of 40 assessed by Dr. Umakanthan.[11] The ALJ cannot point to only those portions of the treatment record that bolster his findings. See Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore competent evidence in the record in order to justify his conclusion); see also Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted). As such, the ALJ erred by failing to address "competent evidence" in the record.

Moreover, not only did the ALJ fail to mention certain medical evidence in the decision, specifically the multiple diagnoses and the low GAF assessment found by Dr. Umakanthan, as well as the observations made by Dr. Umakanthan during the medication visits, he also did not offer any reasons sufficient to reject such evidence. Although the ALJ appears to rely on the opinion of Dr. Colonna, the ALJ's apparent reliance, without more, is insufficient to constitute a

---

[10] Although the ALJ cites to the exhibit that includes, inter alia, Dr. Umakanthan's evaluation, i.e., "Exhibit B22F," the ALJ failed to discuss Dr. Umakanthan's opinion or any portion of the evaluation in the decision. [AR at 18.]

[11] While a GAF score may not have a "direct correlation" to the Social Security severity requirements in the Listings (see Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. § 50746-01 (Aug. 21, 2000)), the ALJ does not proffer any authority indicating that Dr. Umakanthan's assessment of a GAF score of 40 and its implications may be ignored without sufficient reason. See Olds v. Astrue, 2008 WL 339757, at *4 (D. Kan. Feb. 5, 2008) (a low GAF score does not alone determine disability, but it is a piece of evidence to be considered with the rest of the record) (citation omitted); see also Escardille v. Barnhart, 2003 WL 21499999, at *5-6 (E.D. Pa. June 24, 2003) (ALJ's failure to address a GAF score of 50 "or its meaning regarding plaintiff's ability to maintain employment" was error). This is especially true where the ALJ relies, at least in part, on another higher GAF score.

specific and legitimate reason for disregarding Dr. Umakanthan's opinion. Generally, more weight is given to the opinions of treating physicians because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Dr. Umakanthan performed an Initial Psychiatric Evaluation of plaintiff in February 2004, saw plaintiff on a regular basis for over a year for medication visits, and prescribed medications to plaintiff as evidenced by Dr. Umakanthan's interdisciplinary notes contained in the record. [AR at 331-34, 375-93.] See 20 C.F.R. §§ 404.1527(d)(2)(i), (ii), 416.927(d)(2)(i), (ii) (weight accorded to a treating physician's opinion dependent on length of the treatment relationship, frequency of visits, and nature and extent of treatment received). Based on the length of the treatment relationship and Dr. Umakanthan's experience with plaintiff, Dr. Umakanthan had the broadest range of knowledge regarding plaintiff's medical conditions, which is supported by the record. See Smolen, 80 F.3d at 1279; see also Lester, 81 F.3d at 833 ("The treating physician's continuing relationship with the claimant makes him especially qualified . . . to form an overall conclusion as to functional capacities and limitations, as well as prescribe or approve the overall course of treatment."). The ALJ may only give less weight to a treating physician's opinion that conflicts with that of another physician if the ALJ provides sufficient specific and legitimate reasons for discounting the opinion. See SSR 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."); see also 20 C.F.R. §§ 404.1527(d), 416.927(d); Lester, 81 F.3d at 830; Orn, 495 F.3d at 632-33. Here, the ALJ failed to discuss Dr. Umakanthan's findings in the Initial Psychiatric Evaluation, as well as Dr. Umakanthan's observations during the medication visits, and did not provide legally sufficient reasons, or, for that

matter, offer any reasons whatsoever for disregarding the opinion of Dr. Umakanthan. As such, remand is warranted on this issue.[12]

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly consider the opinion of plaintiff's treating psychiatrist, Dr. Umakanthan. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: July 1, 2008

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[12] As the ALJ's consideration on remand of Dr. Umakanthan's opinion may impact the other issues raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion not to address those issues in this Order. Rather, the lay witness testimony of plaintiff's wife, Maritza Kirchner, and the vocational expert's testimony, should be re-examined in light of the remand Order.